**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

DILIP MEHTA, M.D.,

    Plaintiff,

v.                                                    Case No. 8:05-CV-27-T24-TGW

HCA HEALTH SERVICES OF FLORIDA,
INC., d/b/a HCA OAK HILL HOSPITAL,

    Defendant.

_____/

## **ORDER**

This cause comes before the Court on Defendant HCA Health Services of Florida, Inc.'s Motion for Summary Judgment. (Doc. No. 47.) Plaintiff Dilip Mehta, M.D. opposes this motion arguing that certain genuine issues of material fact remain. (Doc. No. 48.) For the reasons stated herein, Defendant's motion is granted.

**I.    Facts and Procedural History**

HCA Health Services of Florida, Inc. operates HCA Oak Hill Hospital in Spring Hill, Florida ("Oak Hill"). (*See* Doc. No. 47.) Dilip Mehta, M.D. ("Mehta") is a radiologist of Indian descent who performed radiology services at Oak Hill pursuant to a series of exclusive contracts between Oak Hill and Spring Hill Radiology. (Pl.'s dep. II, pp. 5-6).[1]

---

[1] The parties filed excerpts from two depositions of Mehta. The Court will refer to the deposition taken on September 16, 2005, as "Pl.'s dep. I," and the deposition taken on April 7, 2006, as "Pl.'s dep. II."

**Spring Hill Radiology**

Spring Hill Radiology is a partnership comprised of professional associations formed under the names of the physicians who perform radiology work at Oak Hill.[2] (*Id.* at 33.) Each professional association is allocated a percentage of the profits and losses of the partnership. (*Id.* at 199-200, 235; Ex. 11.) The partnership also employs non-partner physicians to work at Oak Hill. (*Id.* at 150, 152, 194.) Unlike the partners who created professional associations under their name, these employees sign an employment agreement with the partnership and receive a fixed salary. (*Id.* at 195, 235; Ex. 22.) As employees, they have no input in the operation of the partnership, including the renewal of the partnership's contract with Oak Hill. (*Id.* at 130-31.) The Spring Hill Radiology professional associations make decisions regarding the terms and conditions of the non-partners' employment. (*Id.* at 119-21, 233.)

Mehta joined Spring Hill Radiology as an employee in August of 1990, whereupon he received medical staff privileges at Oak Hill. (*Id.* at 167, 196-197). Three years later, in August of 1993, Spring Hill Radiology offered Mehta full partnership, which he accepted. (*Id*. at 198-200; Ex.9.) At that time, Mehta formed a professional association in his name, Dilip Mehta, M.D., P.A., which became a partner of Spring Hill Radiology. (*Id.* at 200-04, 219-20; Exs. 10, 11.) Mehta is the sole shareholder, officer, and member of the board of directors of Dilip Mehta M.D., P.A. (*Id.* at 202; Ex. 10.)

Since the mid-1980's, Spring Hill Radiology has been the exclusive provider of radiology services at Oak Hill, pursuant to a series of exclusive contracts. (*Id.* at 130-31.) Throughout the

---

[2]In late 2003, Spring Hill Radiology consisted of Aruna Medara, M.D., P.A., Dilip Mehta, M.D., P.A., and Robert Weaver, M.D., P.A. (Pl.'s dep. I, p. 33, 70, 103, 118, 120.) At that time, the partnership also employed Dr. Wasserman. (*Id.* at 118, 120.)

years, one of the Spring Hill Radiology partners negotiated and executed the renewal of the contract with Oak Hill. (*Id.*) The final contract between Spring Hill Radiology and Oak Hill was for a two-year term to extend from January 1, 2002, to December 31, 2003. (Smith aff., p.1.)

### Alleged National Origin Discrimination and the Parties' Negotiations of the Contract Renewal

Arthur Flatau, M.D. is one of the top ten revenue-generating physicians at Oak Hill. (Smith dep., p. 103.) On or about September 21, 2003, Flatau accused Mehta of touching his wife inappropriately. (Pl.'s dep. II, p. 43.) Flatau confronted Mehta about the incident on several occasions, and each time, Flatau angrily yelled racial slurs at him. (Pl.'s dep. I, p. 334, 344-345.) Flatau called Mehta a "slimy mother fucker Indian bastard" and asked Mehta what the term "slime ball" meant "in [his] fucking Indian language." (*Id.*) Flatau wrote a letter to Mehta stating that if Spring Hill Radiology left Oak Hill Hospital quietly, his wife would drop her assault charges against Mehta. (Pl.'s dep. II, p. 45-46.) When Mehta refused to leave Oak Hill, Flatau also said to him, "you Indian bastards, you do not belong here, this is not your country." (*Id.* at 46.) Flatau generally admits making these statements. (Flatau dep., p. 172, 254, 290-91.)

Mehta reported Flatau's comments to the Chief Executive Officer of Oak Hill, Mickey Smith, and the Assistant Administrator of Oak Hill, Thomas Edwards. (Pl.'s dep. I, p. 348, 355, 387-391, 404; Pl.'s dep. II, p.50, 58-61.) On several occasions, Smith spoke to Flatau about his remarks and his conduct in confronting Mehta. (Pl.'s dep. I, p. 387-391.) Each time they met, Flatau insisted that either Mehta had to leave Oak Hill Hospital or Flatau would leave. (Smith dep., p.16, 99-100; Flatau dep., p.194, 234.) Flatau explained that the incident involving his wife "was not an issue that [he] was going to be able to live with." (Flatau dep., p. 194.) Flatau

repeated his demand that Smith force Mehta and Spring Hill Radiology out of Oak Hill on a weekly basis from September through December of 2003.  (Smith dep., p. 100-01.)

Thereafter, Smith and Edwards informed Mehta that, although Flatau admitted making the remarks, they were not going to suspend him or prohibit him from entering the radiology department where Mehta worked.  (Pl.'s dep. I, p. 387-391.)  During this time period, the Oak Hill Board of Trustees initiated a peer review investigation into Flatau's allegation that Mehta touched his wife inappropriately.  (Pl.'s dep. II, p. 60.)  Apparently, although it is not clear from the record, the physician members of the Board were recused from the peer review investigation.  (*Id.*)

Also during this same time period, around October of 2003, Mehta began to negotiate the renewal of the Spring Hill Radiology contract with Smith and Edwards.  (*Id.* at 89.)  Smith informed Mehta that Oak Hill might not renew the contract if "Dr Flatau is not going to budge . . . ." (Pl.'s dep. I, p. 324).  In fact, Smith told Mehta that "the only reason where I will not renew your contract . . . is because of Dr. Flatau's threats." (*Id.* at 362).

Despite Flatau's threats, however, the contract negotiations continued, and in November, Edwards sent Mehta a draft of the new contract that was set to begin on January 1, 2004.  (Pl.'s dep. II, p. 127-28.)  After consulting with his attorney, Mehta again discussed the draft contract with Edwards in mid-December 2003.  (*Id.* at 19-20, 27-29, 128-29.)  Because the December 31st contract termination date was approaching, and the parties had not reached agreement on all the contract terms, Smith and Mehta decided to extend the existing contract for two months until February 28, 2004, in order to complete the contract negotiations and to complete the peer review investigation.  (*Id.* at 29-30.)

On December 15, 2003, while the contract negotiations were ongoing, Mehta was summoned to a meeting of the non-recused members of the Oak Hill Board of Trustees. (*Id.* at 20-24.) The Board informed Mehta that, based on the peer review committee's report, the Board had decided not to renew his contract and that he had 48 hours to resign from Oak Hill's medical staff. (*Id.* at 24.) One of the Board members threatened him that "they would make [his] life miserable if [he] didn't resign." (*Id.*) Smith admits that the purpose of the December 15th meeting was to give Mehta "the opportunity to resign before the [peer review] proceedings reached the point where it would be a reportable event," in which case Flatau's allegations against Mehta would be entered into the National Practitioner Data Bank and made available to the public. (Smith dep., p. 83, 92.) Moreover, the Board threatened Mehta that if he did not resign, additional women other than Flatau's wife would be called as witnesses against him in his peer review proceeding. (*Id.* at 85). Mehta refused to resign. (*Id.* at 89).

Despite the fact that the Oak Hill Board asked for Mehta's resignation, Oak Hill still desired to renew its contract with Spring Hill Radiology. (*Id.* at 91-92.) In fact, Smith testified that there was a possibility that Mehta could continue to work at Oak Hill, if the results of the peer review investigation did not affect his hospital privileges. (*Id.*) Therefore, the contract negotiations continued until mid-January. (Pl.'s dep. I, p. 424; Pl.'s dep. II, p. 30-32.) At that time, Smith informed Mehta that the peer review committee "found no evidence of wrongdoing," but that Oak Hill had decided not to renew the contract with Spring Hill Radiology. (*Id.*)

**The Court's August 8, 2005 Order**

Thereafter, Mehta filed a seven-count complaint against Oak Hill in his individual capacity, alleging national origin discrimination and retaliation in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the Florida Civil Rights Act, Fla. Stat. § 760.01 et seq. ("FCRA"), 42 U.S.C. § 1981, and state breach of contract laws. (Pl.'s Am. Comp.) Specifically, Mehta alleges that Oak Hill wrongfully capitulated to Flatau's racist demands by not renewing its contract with Spring Hill Radiology, deviated from the Oak Hill Hospital by-laws during the peer review investigation, and terminated his staff privileges. (*Id.*)

On August 8, 2005, the Court dismissed a majority of Mehta's claims. (Doc. No. 10.) First, the Court dismissed Counts I through IV of Mehta's Amended Complaint, which alleged discrimination and retaliation in the non-renewal of the Spring Hill Radiology contract in violation of Title VII and the FCRA. (*Id.* at 11, 21.) The Court found that Mehta's status as an independent contractor–rather than an employee–of Oak Hill precluded him from proceeding with those claims against Oak Hill. (*Id.*) However, the Court ruled that Mehta could proceed with his Title VII claim that, by not renewing the Spring Hill Radiology contract, Oak Hill interfered with Mehta's employment opportunities with Spring Hill Radiology. (*Id.* at 13.) Next, the Court dismissed Counts V and VI of Mehta's Amended Complaint, which alleged discrimination and retaliation in the non-renewal of the Spring Hill Radiology contract in violation of § 1981. (*Id*. at 17.) The Court reasoned that it was Spring Hill Radiology's right–not Mehta's right–to enforce the contract with Oak Hill, and therefore Mehta did not have an individual § 1981 cause of action relating to the contract's non-renewal. (*Id.*) Finally, the Court dismissed Count VII, which alleged breach of contract pursuant to state law, because Mehta failed to allege intentional fraud. (*Id*. at 19.)

Accordingly, the remaining allegations before the Court include the following: 1) that Oak Hill violated Title VII and the FCRA when it interfered with Mehta's employment

opportunities with Spring Hill Radiology (Counts I and II), and 2) that Oak Hill violated § 1981 when it discriminated and/or retaliated against Mehta by terminating his medical staff privileges and by failing to follow its own peer review procedures contained in its Medical Staff Bylaws (Counts V and VI).

## II.    Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of showing the Court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A moving party discharges its burden on a motion for summary judgment by "showing" or "pointing out" to the Court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S. Ct. at 2554. Rule 56 permits the moving party to discharge its burden with or without supporting affidavits and to move for summary judgment on the case as a whole or on any claim. *See id.* When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing there is a genuine issue for trial. *Id.* at 324, 106 S. Ct. at 2553.

In determining whether the moving party has met its burden of establishing that there is no genuine issue as to any material fact and that it is entitled to judgment as a matter of law, the Court must draw inferences from the evidence in the light most favorable to the non-movant and resolve all reasonable doubts in that party's favor. *Samples v. City of Atlanta*, 846 F.2d 1328,

1330 (11th Cir. 1988). Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant the summary judgment motion. *Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988) (per curiam). A dispute about a material fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

**III.    Discussion**

    **A.    Counts I and II: Interference with Employment Opportunities in Violation of Title VII and the FCRA[3]**

First, Oak Hill argues that summary judgment on Mehta's Title VII and FCRA interference claims is appropriate because Mehta was not an employee of Spring Hill Radiology at any time material to the Amended Complaint. Rather, Oak Hill argues that Mehta was the president and sole shareholder of a professional association that functioned as a partner in the Spring Hill Radiology partnership. In response, Mehta argues that a genuine issue of material fact remains as to whether he was an employee of Spring Hill Radiology because he examined patients in the Oak Hill Radiology Department pursuant to a contract between Spring Hill Radiology and Defendant. Furthermore, he argues that the partnership controlled his work at Oak Hill by negotiating the exclusive contract that established the hours and terms of his work in the Radiology Department. Finally, he argues that the fact that Spring Hill Radiology paid his

---

[3]Decisions construing Title VII are applicable when considering claims under the FCRA because the FCRA was patterned after Title VII. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

8

professional association, Dilip Mehta, M.D., P.A.., which in turn paid him, is evidence of the fact that he was employee of Spring Hill Radiology.

Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . national origin." 42 U.S.C. § 2000e-2(a). "It is clear from the language of the statute that Congress intended that the rights and obligations it created under Title VII would extend beyond the immediate employer-employee relationship." *Zaklama v. Mt. Sinai Med. Ctr.*, 842 F.2d 291, 294 (11th Cir. 1988). Therefore, courts have found that the statute extends to the situation in which a defendant controls, and has interfered with, an individual's employment relationship with a third party. *See id.*; *Pardazi v. Cullman Med. Ctr.*, 838 F.2d 1155, 1156 (11th Cir. 1988) (permitting the plaintiff to proceed with his claim that the defendant hospital interfered with his employment opportunities with a third party professional corporation). To bring a Title VII suit for interference with an employment relationship with a third party, Mehta must first establish that he was an employee of Spring Hill Radiology. *See Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1242-43 (11th Cir. 1998) (holding "that only those plaintiffs who are 'employees' may bring a Title VII suit). An "employee" is defined under Title VII as an "individual employed by an employer." 42 U.S.C. § 2000e(f).

In a case analogous to the instant one, *Clackamas Gastroenterology Associates, P.C. v. Wells*, 538 U.S. 440, 123 S. Ct. 1673, 155 L. Ed. 2d 615 (2003), the Supreme Court considered whether a shareholder-director of a professional corporation qualifies as an "employee" for purposes of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). In

9

doing so, the Supreme Court stated that the following six factors are relevant to the inquiry: (1) whether the organization can hire or fire the individual; (2) to what extent the organization supervises the individual's work; (3) whether the individual reports to someone higher in the organization; (4) to what extent the individual is able to influence the organization; (5) whether the parties intended that the individual be an employee, as expressed in written contracts; and (6) whether the individual shares in the profits, losses, and liabilities of the organization. *Id.* at 449-50; 123 S. Ct. at 1680. In other words, "an employer is the person, or group of persons, who owns and manages the enterprise," who "can hire and fire employees," who "can assign tasks to employees and supervise their performance," and who decides "how the profits and losses of the business are to be distributed." *Id.* at 450; 123 S. Ct. at 1680. Although *Clackamas* involved a claim under the ADA, the analysis is applicable to determining whether Mehta, as the owner of a professional association that is a partner of Spring Hill Radiology, also qualifies as an employee of Spring Hill Radiology for purposes of Title VII.[4]

The record reveals that, although Mehta began his tenure with Spring Hill Radiology as an employee, he was no longer an employee when he became a partner through his professional association in August of 1993. As the sole shareholder and officer of Dilip Mehta, M.D., P.A., Mehta was part of the group that managed Spring Hill Radiology. As a partner, Mehta's professional association shared in the profits and liabilities of Spring Hill Radiology and was compensated based upon how well the partnership performed. In conjunction with the other

---

[4] The ADA and Title VII have nearly identical definitions of "employee." *See* 42 U.S.C. §§ 2000e(f), 12111(4) (both statutes defining "employee" as "an individual employed by an employer"). Furthermore, the Supreme Court noted that the inter-circuit conflict regarding the meaning of "employee" extends beyond the ADA to cases involving Title VII. *Clackamas*, 538 U.S. at 444 n.3, 123 S. Ct. at 1677 n.3.

partners, his professional association exercised supervision and control over all aspects of Spring Hill Radiology, including the contract renewal negotiations with Oak Hill and making decisions regarding the terms and conditions of the non-partners' employment with Spring Hill Radiology. Furthermore, Mehta's role at Spring Hill Radiology was memorialized in a partnership agreement, not an employment contract. Accordingly, because Mehta has not raised a genuine issue of material fact as to whether he was an employee of Spring Hill Radiology at the time relevant to his claims, the Court grants Oak Hill's motion for summary judgment with regard to Mehta's Title VII and FCRA interference claims.

> **B.  Counts V and VI: Termination of Medical Staff Privileges and Failure to follow Medical Staff Bylaws regarding Peer Review Procedures in Violation of § 1981**

Next, Oak Hill argues that summary judgment is appropriate as to Mehta's § 1981 claim that it discriminated and/or retaliated against him by terminating his medical staff privileges. In support of its position, Oak Hill relies on the "automatic expiration" provision of the Spring Hill Radiology contract. Under this provision, the medical staff privileges of the Spring Hill Radiology radiologists "shall automatically expire" upon the termination of Spring Hill Radiology's contract with Oak Hill. Thus, according to Oak Hill, the termination of Mehta's staff privileges was not an intentional act of discrimination or retaliation, but an automatic function of the non-renewal of Spring Hill Radiology's contract. Furthermore, Oak Hill argues that Mehta has failed to show that Oak Hill treated any similarly-situated physicians more favorably than him in applying the automatic termination provision.

Mehta disputes Oak Hill's interpretation of the "automatic expiration" provision. In particular, he asserts that this provision only applies "upon the termination of" the contract, and

11

the contract between Spring Hill Radiology and Oak Hill was never terminated–it was merely not renewed at the end of the contract period. Therefore, according to Mehta, the "automatic expiration" provision was never triggered. Additionally, Mehta relies on *Northeast Georgia Radiological Associates, P.C. v. Tidwell*, 670 F.2d 507, 508 (5th Cir. Unit B 1982) for the proposition that the Oak Hill Medical Staff Bylaws constituted a contract between himself and Oak Hill, which afforded him due process protections with regard to the termination of his hospital privileges. Finally, Mehta argues that Florida Statute § 395.0193(3) sets forth the exclusive conditions upon which a physician's hospital privileges can be revoked and does not permit a physician's hospital privileges to be revoked when a physician loses an exclusive contract with a hospital.

     Summary judgment is appropriate as to this claim for several reasons. First, Mehta has failed to show that Oak Hill treated similarly-situated physicians more favorably than him with regard to the termination of his medical staff privileges. "To show that employees are similarly situated, the plaintiff must show that the employees are similarly situated in all relevant aspects." *Knight v. Baptist Hosp., Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003) (per curiam) (citations and quotations omitted). At his deposition, Mehta vaguely asserted his belief that Dr. Tracy was treated more favorably than him with regard to the termination of her hospital privileges. (Pl.'s dep. II, p. 180-82.) However, the unrebutted evidence shows that, at one point, Dr. Tracy had clinical privileges both to perform anesthesiology services and to perform pain management procedures at Oak Hill. (Smith aff., p.4.) When her group's exclusive anesthesiology contract was terminated, Dr. Tracy's anesthesiology privileges automatically expired. (*Id.*) Dr. Tracy remained on the medical staff, however, because of her independent and separate privileges

to perform pain management procedures. (*Id.*) Therefore, Dr. Tracy and Mehta are not similarly-situated physicians. Furthermore, Mehta does not provide any support for his argument that § 395.0193(3) prohibits a physician's hospital privileges to be revoked when a physician loses an exclusive contract with a hospital. That statute sets forth the due process by which a hospital may suspend, deny, revoke, or curtail a physician's privileges. Nothing in the statute prohibits a hospital from terminating a physician's privileges when the hospital elects not to renew an exclusive contract between the parties, as is the case here. Finally, Mehta's reliance on *Northeast Georgia Radiological Associates, P.C.* is misplaced. Although the case is factually analogous to the instant case, it is not controlling because the plaintiff in that case raised a claim pursuant to § 1983, not § 1981. Accordingly, because there is no genuine issue of material fact with regard to Mehta's claim that Oak Hill discriminated and/or retaliated against him by terminating his hospital privileges, the Court hereby grants Oak Hill's motion with regard to this claim.

      Finally, Oak Hill asserts that summary judgment is appropriate as to Mehta's § 1981 claim that he was subjected to discrimination and/or retaliation in the way that Oak Hill conducted the peer review investigation of Flatau's wife's allegation that Mehta touched her inappropriately. Relying on Florida Statute §§ 395.0191 and 395.0193, Oak Hill asserts that any discovery or discussion of the matters concerning the peer review process would invade Florida statutory privileges governing hospital procedures for the credentialing of medical staff and peer review procedures. Accordingly, Oak Hill does not discuss the substance of the peer review process in its motion for summary judgment. Nevertheless, Oak Hill argues that summary judgment is appropriate because Mehta has not alleged that he suffered an adverse employment

13

action with regard to the peer review proceedings. To the contrary, according to Oak Hill, Mehta admits that it decided not to take any adverse action against him.

In response, Mehta asserts that he alleged an adverse employment action sufficient to preclude summary judgment, namely, that Oak Hill improperly excused physician members of the peer review committee, which resulted in a termination of his medical staff privileges and the non-renewal of Spring Hill Radiology's contract. In particular, Mehta points to his deposition testimony in which he stated his belief that the Spring Hill Radiology contract would have been renewed, and therefore his staff privileges would have been retained, "[i]f the peer review [investigation] had been [conducted] the way it should normally [be conducted] based on the bylaws of the Hospital." (Pl.'s dep. II, p. 12-13.)

To state a prima facie case of discrimination or retaliation, the plaintiff must show that he suffered an "adverse employment action." *Davis v. Town of Lake Park*, *Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001). To prove an adverse employment action, "an employee must show a serious and material change in the terms, conditions, or privileges of employment." *Id*. at 1239. Furthermore, "the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances." *Id.*

Summary judgment is appropriate as to this remaining claim because Mehta has failed to put forth sufficient evidence to raise an issue of fact at the summary judgment stage of this litigation. The record is almost entirely devoid of details regarding the peer review process, and although some of the deposition testimony alludes to the removal of physician members from the peer review investigation, the Court does not have sufficient evidence before it to find that there

is a genuine issue for trial. Mehta's testimony that he believes the outcome of the peer review investigation would have been different had Oak Hill not removed the physician members from the process is insufficient. Furthermore, although Mehta filed the Oak Hill Hospital Medical Staff Bylaws, the Court is unable to determine how Oak Hill deviated from these Bylaws during the peer review process. Therefore, viewing the record in the light most favorable to Mehta, the Court grants Oak Hill's motion for summary judgment with regard to this final claim.

**IV.   Conclusion**

Accordingly, it is **ORDERED AND ADJUDGED** that Oak Hill's Motion for Summary Judgment (Doc. No. 47) is granted in its entirety. As there are no remaining claims before the Court, the pretrial conference set in this case for Thursday, November 2, 2006, is hereby cancelled. The Clerk is directed to enter judgment in favor of Defendant Oak Hill and to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 31st day of October, 2006.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge